UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MATTHEW BUSH,<br>      Plaintiff,<br>v.<br><br>GOSMITH, INC.,<br>FRIEND TRUSTED, INC.,<br>And JOHN DOES 1-5,<br>      Defendants | CIVIL ACTION NO.<br>  17-_____ |

## COMPLAINT

Plaintiff, Matthew Bush, files his Complaint against Defendants GoSmith, Inc., Friend Trusted, Inc. and John Does 1-5 (GoSmith, Inc., Friend Trusted, Inc. and John Does 1-5 are referred to collectively as "Defendants") respectfully showing the following:.

### THE PARTIES

1.    Matthew Bush ("Plaintiff") is an adult resident in Atlanta, Fulton County, Georgia.

2.      Defendant GoSmith, Inc. (hereinafter "Smith") is a corporation duly incorporated under the laws of Delaware, and having as its registered agent National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware.

3.      Upon information and belief, Smith's principal place of business is 1370 Willow Road, Menlo Park, CA 94025.

4.      Friend Trusted, Inc. (hereinafter "Friend") is also a corporation duly incorporated in the State of Delaware and having as its registered agent Business Filings Incorporated 108 West 13th Street, Wilmington, Delaware.

5.      Upon information and belief, Friend has its principal place of business at 1370 Willow Road, Menlo Park, CA, 94025.

6.      Upon information and belief, Friend transacted business as Smith for a period of several years.

7.      John Does 1 - 5 are unknown people, corporations, LLCs, or other entities, that also participated in, or are liable for, the marketing scheme described herein of sending unsolicited text messages in violation of the Telephone Consumer Protection Act.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction over the parties and subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331 and 1332.  This Court has federal

question jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq.

9.     Additionally, the Court has jurisdiction under 28 U.S.C. § 1332, because diversity of citizenship exists between Plaintiff and Defendants.  In addition, the amount in controversy between the parties exceeds $75,000.

10.    Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated within this Court's judicial district.

11.    Defendants sent multiple unsolicited text messages to Plaintiff in Georgia on his cell phone with an Atlanta area code.

12.    Plaintiff requests a jury trial.

## FACTS

13.     Defendant Smith is a lead generation company that connects homeowners and certain contractors.

14.    Upon information and belief, Friend transacted business as Smith for a period of several years.

15.    Upon information and belief, Brenton Marrelli and Darwin Widjaja were the founders and/or officers of Friend Trusted, Inc. and/or Smith and/or GoSmith, Inc.  *See* Feb. 2015 article, The Smith App Brings Simplicity and Transparency to the Home Improvement Industry, *See* **Exhibit A.**

3

16.    This article states that the "site, which was originally named Friend Trusted, was recently rebranded with the name Smith. … For more information, please visit http://www.gosmith.com/"  *See* **Exhibit A.**

17.    Smith maintains a website of www.gosmith.com ("the Smith website").

18.    According to the Smith website, Brenton Marrelli is the CEO.  *See* **Exhibit B**.

19.    Smith wants contractors to purchase "credits."

20.    Smith markets to contractors that if they purchase credits, they will receive a "guaranteed connection" with a homeowner.

21.    According to Smith's Terms of Use on the Smith website, in order for a contractor to purchase a particular appointment lead, "you must have a sufficient credit balance in your Smith account.  You can buy additional credits by credit card or Paypal.  The cost for an appointment varies depending on service type, expected project cost, demand and other factors, and may be adjusted from time to time by Smith in its sole discretion."  *See* **Exhibit C.**

22.    The Smith website states:

How does Smith Work?

Join Smith and boost up your professional profile. Once you are matched with a consumer for their home project, you will be notified to provide a quote based on the project details provided which is viewable from your mobile device or computer. On average, a homeowner receives 3 quotes, though in some markets it can be up to 5. If you are interested in making a guaranteed

connection with the homeowner, you simply use the appointment credits to view their contact info and schedule the appointment.

How much do I need to pay?

There's no monthly fee and it's free to quote online. Appointment credits are only used for a guaranteed connection with a homeowner to view their contact information and set an appointment. The number of credits needed depends on the job size and category, view the Appointment Credits Per Category breakdown for more info.

*See* **Exhibit D.**  See also, http://www.gosmith.com/profaq

23.    The Smith website states:

How do I buy more credits?

Credits can be purchased from your account dashboard, look for the "Buy" button at the top next to your current credit count. We offer discounts on volume purchases, to more you buy the more you save. Credits never expire and our system prioritizes accounts with positive credit balances.

How does billing work?

Each time you indicate you are interested in a project and would like to make the connection with the homeowner, you will use the appointment credits to release the homeowners contact information. If you do not have enough credits on file and have Easy Pay enabled, your payment method store with Stripe will be charged to purchase the credits needed to secure the guaranteed connection.

*See* **Exhibit E.**

24.    The Smith website also addresses refunds, and how contractors can

change their payment methods.

25.    The Smith website also discusses a "guaranteed connection:"

What is a guaranteed connection?

5

We want to ensure you are completely satisfied with the service we provide; therefore we guarantee a connection with a homeowner by their preferred method of contact or we will refund the applicable credits back to your account for use towards your next job.  Preferred contact methods can consist of a phone call, text or email to discuss project details and schedule a time to meet.  We value your time and know that nothing is more frustrating than not being able to reach a homeowner.

26.     Smith does not hire the contractors who utilize its services or pay the

contractors.  According to the website:

Does Smith pay me for the job?

No, the homeowner will pay you directly after you complete the service. Smith does not collect money from your customers.

27.     The Smith website promotes that its "automated system" will help

contractors win more jobs.  It states:

How does Smith help me win more jobs?

When you provide an online quote to a homeowner, *our automated system will periodically follow-up with the homeowner* to make sure they view your estimate and proactively ask if they have any questions regarding your quote or company info.  *The automated follow-up happens periodically* (after 3 days, 7 days and 14 days) and is a complimentary feature that we offer to help you win more jobs.  To maximize your chance of success, we strongly recommend boosting your profile by uploading project photos, happy customer testimonials and completing all areas of your free online profile.

*See* **Exhibit F** (emphasis added).

28.     Additionally, Smith markets that one of the "perks" or ways that

Smith is different than other lead/referral service companies is that Smith provides

"Automated Follow up."  *See* **Exhibit G.**

6

29.     Plaintiff lives in Atlanta, Georgia, and has lived in the greater Atlanta area for many years, well before 2015.

30.     Plaintiff currently has a personal cell phone number, with an Atlanta area code,   of 770.

31.     Plaintiff has had this same cell phone number for many years.

32.     In 2015, Plaintiff registered his cell phone number on the National Do Not Call Registry.

33.     Plaintiff does not have another phone, such as a land-line.

34.     Thus, Plaintiff uses his cell phone for all calls, including residential and personal purposes.

35.     From December 2016 through June 2017, Plaintiff received at least 36 text messages advertising and marketing Smith on his cellular phone.

36.     Plaintiff received text messages on his cell phone sent by or on behalf of Defendants, from a variety of phone numbers, including: (404) 396-7152, (415) 470-4251, (408) 479-0655, (408) 687-5641, (404) 977-7765, (415) 745-5388, (281) 726-0244, (415) 385-1780, (650) 732-0275, (518) 753-1655, (408) 479-1638, (650) 464-1773, (248) 897-3269, (415) 418-0403, (415) 470-4251, (857) 360-4125, (628) 208-9783, (646) 689-4400, (214) 531-1884, (475) 225-9308, (650) 833-8968, (415) 310-3213, (475) 225-9308, (408) 479-0571, (650) 727-

7007, (650) 339-3624, (628) 220-5778, (415) 582-3111, (510) 513-1451, (650) 339-8573.

37.     Before he started getting these texts on his cell phone in December 2016, Plaintiff did not have any relationship with Smith.

38.     Plaintiff never gave Smith consent to send him text messages.

39.     Plaintiff did not, and does not, have a Smith profile or a Smith account.

40.     Plaintiff was not informed, and does not know why he started getting these text messages from or on behalf of Smith on his cell phone.

41.     Before December 2016, Plaintiff did not even know what Smith was.

42.     The text messages were unwanted, annoying and an invasion of privacy.

43.     Plaintiff received his first text message from or on behalf of Smith on his personal cell phone on December 2, 2016.

44.     Plaintiff received three text messages from or on behalf of Smith in December 2016.

45.     Plaintiff has continued to receive numerous and unsolicited text messages on his personal cell phone about jobs.

46.     Many of the texts received by Plaintiff on his personal cell phone concerned jobs in the Georgia area.

8

47.   As an example, Plaintiff received a text from the number, 650 732-0275, which stated "Appointment requested!  Job#1358715 in Lagrange.  Contact the customer via your Smith account at (912) 434-2842 or text 2 to decline."  *See* **Exhibit H.**

48.   On March 23, 2017, Plaintiff received more text messages from Defendants, or on their behalf.  The text was from a phone number 650 732-0275. The text at 12:02 PM stated: "Sonja for proj #1358715 is waiting to hear from you by Sat 9am.  Call (912) 434-2842 to get connected with them now."  *See*, **Exhibit H.**

49.   On March 23, 2017, at 1:46 PM, Plaintiff received another text on his personal cell phone that stated "Your limited time offer to save 50% expires in 12 hours.  Call (912) 434-2842 to get credits & contact info for Sonja before it's too late."  Ex. H.

50.   When the numbers is dialed, it asks the caller to log in or access your Smith account.

51.   Plaintiff did not have a Smith account.

52.   There was no easily available option to request Defendants to stop sending the text messages.

53.   Plaintiff tried calling one of the numbers to request that they stop sending the text messages.

**COUNT I – Violation of Do Not Call Registry 47 U.S.C. § 227(c)(5)**

54.    The preceding paragraphs in the Complaint are incorporated by reference as if fully restated here.

55.    The TCPA provides for a National Do Not Call Registry.

56.    People may register residential phone numbers, or land lines, as well as cellular phone numbers on the Do Not Call Registry.

57.    47 U.S.C. § 227(c) is titled "Protection of subscriber privacy rights."

58.    47 U.S.C. § 227(c)(3) states in part that the "regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase."

59.    Section 227(c)(5) provides for a private cause of action for persons who have registered their phone number on the Do Not Call Registry and receive more than one telephone call or text within any 12-month period by or on behalf of the same entity.

60.    47 U.S.C. § 227(c)(5) states:

(5) Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $ 500 in damages for each such violation, whichever is greater, or

(C) both such actions.

61.   Plaintiff has received no fewer than 36 text messages on his personal cell phone by or on behalf of Defendants within a 12 month period.

62.   These text messages sent to Plaintiff were unsolicited and unwanted.

63.   Plaintiff registered his cell phone number on the Do Not Call Registry before he started received the texts at issue.

64.   Therefore, Plaintiff seeks to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater.

65.   Plaintiff also seeks an injunction from this Court to enjoin these Defendants from sending any more unsolicited text messages to his personal cell phone.

66.   Furthermore, 47 U.S.C. § 227(c)(5) states that "If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

67.     Thus, Matt Bush seeks treble damages for each text sent in violation of this subsection, pursuant to section 227(c)(5).

68.     As evidence that Defendants willfully or knowingly violated the TCPA, Plaintiff attaches certain information from the Better Business Bureau ("BBB") about Defendants.  *See* **Exhibit I.**

69.     A number of complaints have been made to the BBB, some of which include spam or unsolicited text messages.   According to the BBB:

> Friend Trusted, Inc., dba Smith (GoSmith.com) came to BBB's attention June 2015. In August 2016, BBB reached out to the company due to concerns from other BBBs regarding a number of issues.  The issues are as follows: www.gosmith.com displayed the BBB Accredited Business Seal on individual business listings; *the company also has unanswered complaints on file with BBB stating that consumers received unsolicited text from Smith*; some complaints state reaching customer service proves to be difficult; and when Smith representatives call a business they state that BBB has provided their company with contact information for the business.

**Exhibit I** (emphasis added).

70.     As additional proof that the violations were knowing and willful, Plaintiff submits that others have either complained online about unwanted and unsolicited text messages as well as filing lawsuits against Defendants.  *See* **Exhibit J.**

## COUNT II — Violation of 47 U.S.C. § 227(b)

71.     The preceding paragraphs in the Complaint are incorporated by reference as if fully restated here.

72.     Defendants and/or their agents made unsolicited text messages to cellular

telephone numbers belonging to Plaintiff and without his prior express consent.

73.     The equipment used to send Plaintiff the unwanted text messages had

the capacity to store or produce telephone numbers to be called using a random or

sequential number generator as well as dial from lists in its database and to dial

such numbers.

74.     Defendants' system had software that could store a database of cell

phone numbers and then automatically send text messages en masse to those stored

cell phone numbers at a later date.

75.     The TCPA defines the term "automatic telephone dialing system" as

"equipment which has the capacity--(A) to store or produce telephone numbers to

be called, using a random or sequential number generator; and (B) to dial such

numbers."

76.     Defendants used an ATDS in sending the multiple text messages to

Plaintiff's personal cell phone for the services that Smith sells.

77.     The Smith website touts that "our automated system will periodically

follow-up with the homeowner …."

78.     The text messages were advertising and telemarketing, because

contractors have to buy credits from Smith to connect with a homeowner.

79.     By making, or having made on their behalf, the unsolicited text message utilizing an automatic telephone dialing system to Plaintiff's cellular telephone without prior express consent, Defendants violated 47 U.S.C. § 227 (b)(1)(A)(iii).

80.     Subsection (b) also provides for a private right of action for violation of this subsection.

81.     47 U.S.C. § 227 (b)(3) states:

Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
(C) both such actions.

82.     Plaintiff seeks to enjoin further violations of subsection (b) by Defendants.

83.     Plaintiff also seeks damages for each violation of subsection (b), pursuant to Section 227(b)(3)(B).

84.     Additionally, upon a finding that Defendants willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.  47 U.S.C. § 227(b)(3).

85.    Defendants knowingly and willfully violated the provisions of subsection (b) and Matt Bush seeks treble damages for each text message in violation of subsection (b).

86.    As evidence that the text messages were willful, Plaintiff refers to certain information from the BBB about Defendants and various online complaints. *See*, **Exhibits I and J.**

87.    Additionally, in 2016 and 2017, lawsuits were filed against Friend Trusted, Inc. for violations of the TCPA.

88.    Upon information and belief, Friend is the predecessor of Smith.  *See* attached BBB Review stating: "Friend Trusted, Inc., dba Smith (GoSmith.com) came to BBB's attention June 2015."

89.    As late as 2017, the privacy policy on the Smith website referred to "Friend Trusted."

90.    Upon information and belief, Friend "rebranded" to Smith.

91.    In June of 2016, Vicki Mankin filed a Complaint against Friend Trusted, Inc. in the United States District Court for the Northern District of California for violations of the TCPA.  Case No. 16cv1582JM-WVG.

92.    In 2017, Heather Proffit filed a Complaint in the United States District Court for the Northern District of California against Friend Trusted for violations of the TCPA.  Case No. 3:17-cv-281.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Matthew Bush, respectfully requests full and complete relief from Defendants, including the following:

A. Injunctive relief prohibiting Defendants from any further violations of Section 227(c) or the regulations prescribed under this subsection;

B. Judgment against Defendants for actual monetary loss suffered by Plaintiff from such violations, or $500 in damages for each such violation (of subsection (c)), whichever is greater;

C. Judgment against Defendants for treble damages for each such violation of subsection (c), totaling $54,000;Injunctive relief prohibiting Defendants from committing any further violations of Section 227(b) or the regulations prescribed under this subsection;

D. Judgment against Defendants for actual monetary loss from such a violation, or $500 in damages for each such violation (of subsection (b)), whichever is greater;

E. Judgment against Defendants for treble damages for each such violation of subsection (b), totaling $54,000; Judgment for damages in the total amount of $108,000 (calculated as follows: 36 x $500 per violation of 227(c), plus 36 x $500 per violation of 227(b) and treble damages under sections 227(c) and (b)); An award to Plaintiff of all costs of prosecuting this action, and

F.  Such other relief as the Court deems just and proper.

This the 7th day of August 2017.

Respectfully submitted,

*/s/  Edward F. Danowitz*
Edward F. Danowitz
Ga. Bar No. 001380
***Danowitz Legal, P.C.***
300 Galleria Parkway, Suite 960
Atlanta, GA 30339
770-933-0960
edanowitz@danowitzlegal.com